# ADELAIDA OLIVIERI ET AL.

## *v.*

# ANTONIO OLIVIERI ET AL.

Ponce, Equity, No. 196.

1. Jurisdiction here is based upon the diversity of citizenship of the parties; and while this court, perhaps, cannot entertain matters of a purely probate character, it may determine the interest of complainants, and perhaps the interest of intervening creditors, in the estate, where the will is one that does not need to be probated, but is admitted by all parties.
2. Under the Civil Code of Porto Rico of 1889, which was in force at the time of the death of the testator, he had a right, where all the heirs were illegitimate, to dispose of two thirds of his estate, and could either better · any particular child or dispose of the property to strangers.

Opinion filed May 17, 1910.

*Messrs. Pettingill & Leake,* solicitors for the complainants.

*Mr. C. M. Boerman,* solicitor for the respondents.

*Mr. W. Vincent Robbins,* guardian *ad litem* for the minors.

*Messrs. Tord, Toro & Canales,* solicitors for the intervening creditors.

Olivieri v. Olivieri.

RODEY, Judge, delivered the following opinion:

This is a bill in equity. It was filed on June 5, 1905, about one year before the present incumbent of this bench arrived on the island. It was amended under date of August 7th of that same year. It is brought by the principal complainant, Adelaida Olivieri de Arevalo, and her husband, Lucio Arevalo y Aguilar, the latter being joined principally because he is her husband, she being in fact the real party in interest. The jurisdiction is based on the diversity of citizenship of the parties, because the complainants are both Spaniards,—the said Adelaida following the nationality of her husband, the other complainant,—and all of the other respondents being either Porto Ricans or Spaniards or subjects of France. The object of the bill as originally filed appears to have been much broader than was the jurisdiction of the court with reference to such matters, but the prayer probably cured any difficulty that might arise on that account, and counsel all now agree that the jurisdiction of the court is governed entirely by the ruling of the Supreme Court of the United States in the Waterman v. Canal-Louisiana Bank & T. Co. 215 U. S. 33, 54 L. ed. —, 30 Sup. Ct. Rep. 10, and that any decree made herein must be limited greatly, or at least circumscribed to some extent, by the force of that decision, and probably ought to only go to the extent of declaring the interest of complainant in the estate, and perhaps the interests of intervening creditors, etc. We are not quite prepared to agree to all of this, as the will is one that never was, and does not need to be, probated, and, as all admit the will, the controversy appears to be one between parties such as perhaps courts of the United States might well take cognizance of.

Olivieri v. Olivieri.

Complainant Adelaida is an heir of the late Felix Olivieri y Cervoni, and the suit is against all the other heirs and their husbands or wives, as the case may be. The heirs at the time the bill was filed numbered some fifteen or twenty persons, although there are but nine direct heirs, of whom complainant is one. In other words, it developed that there are six major heirs, including complainant Adelaida, and the children of three other deceased heirs, which children are also now practically all of age, and take *per stirpes* the portion, if any, coming to their parents respectively.

It appears that the ancestor, Felix Olivieri y Cervoni, was a Corsican. He was born at Luri, in the island of Corsica in the year 1824, but he lived for many years before his death in the village of Villa Alba, in the jurisdiction of Juana Diaz, Porto Rico. This man, it transpires, never married, and never had any legitimate children, although he had many natural children in Porto Rico by different mothers,—the parties to this suit being such children, or children of his natural children, as aforesaid. The old man was principally a coffee raiser, and possessed himself of vast estates on the south side of the island, but at times owed vast sums of money to different creditors and had outstanding many notes and mortgages. Previous to American occupation of Porto Rico, because of the high price which coffee was bringing, his vast estates were worth a large amount of money, and in his will, dated February, 1890, he therefore placed what would now be considered ridiculously high values on all of them, and they numbered some twenty or twenty-five different pieces of real estate and large and small plantations. After making his will, the old man, in 1893, made a mortgage in favor of the complainant Adelaida, his nat-

V. Porto Rico—39.

ural daughter, as a sort of a gift or dowery, previous to her marriage to the other complainant, Lucio de Arevalo, for 31,000 pesos. This mortgage covered the plantations known as Doña Juana and Navajas, although one of such plantations was sometimes called Matrulles. It appears the old man paid 6,000 pesos of this sum to her before her marriage, and was to pay the balance in certain instalments, as set forth in the mortgage, etc. He also in the will gave her a sort of lien on another plantation called Limon, but she was not to be able to do other than to collect the interest on that until the main debt outstanding against it, of some $20,000 pesos, was paid off.

Shortly after the filing of the original bill, a receiver was appointed, and he took charge of the entire estate, and has conducted it and conserved it under the direction of the court ever since. By permission, he borrowed different sums of money, at one time the whole amounting to some $4,500, from the American Colonial Bank of San Juan, Porto Rico. He proceeded with his duties, conducted the plantations, hired the help, marketed the product, and paid his indebtedness, until now there is only some $1,300 and interest due the bank. It also appears that in some manner a former incumbent of this bench authorized it, and the receiver was permitted to pay to the main complainant, Adelaida, and several of the other dependent heirs, small sums of money monthly for their sustenance, although we fail to see where there was any real authority of law under the circumstances for this, it not being certain that, after the payment of the debts, there would be anything at all left for any of the heirs. However, the delay and the conserving of the property have undoubtedly resulted in great benefit to both the mortgage holders, the creditors, and

Olivieri v. Olivieri.

the heirs, because the property unquestionably has greatly in-
creased in value over what it was worth after the great cyclone
of 1899, even though little or nothing shall be left for the heirs
after the matter is finally disposed of.

During the five years the cause has been pending, a great
many side issues, which in some cases amounted to elaborate
trials in and of themselves, were raised by counsel for the origi-
nal parties and by counsel for intervening mortgagees, lien
holders, and creditors, all of which were settled either on direct
hearing by the court itself, or after proofs were taken by exami-
ners, and all these matters and issues now remain of record as
thus settled. The owners of several of these mortgages, and
deeds that are held to have been intended as mortgages, have
been, and are now, clamoring for a right to foreclose the same
and get their money, as found by the court to be due them.

After many hearings and findings made by the court, and
after many orders, and partial or preliminary decrees entered
as to these side issues, the main issue between the parties was
heard by the court itself without the intervention of an examiner
or master, on January 27 and 28, 1910, when all the exhibits
were introduced and counsel on the respective sides fully heard
on the issues. Counsel also thereafter filed short briefs as to
their contentions regarding the matter.

As stated, there were no legitimate heirs to this estate, the
heirs being illegitimate or natural children, who were duly
recognized by the testator in his lifetime and by his will. The
will itself is an elaborate instrument and provided that it
should not be probated, but that all its terms should be settled
extrajudicially by one of the heirs, and in default of his acting,
by another heir, the principal respondent, Antonio Olivieri y

Negron. It transpired that the first-mentioned executor, at the time of the death of his father, was in such ill health that he could not act, and he therefore waived his rights in favor of Antonio, who at once took possession of the entire estate and proceeded to manage it, and did manage it for several years. His alleged mismanagement and general waste of the estate and its substance, and his total ignoring of the rights of the complainant Adelaida, was the cause of the filing of the bill.

At the time of the trial on the main issue, as aforesaid, all the parties in interest then and there represented by counsel agreed in open court that no account should be taken regarding the management of the estate by the executor, Antonio Olivieri y Negron, and it was agreed that the only thing that the court should do, would be to ascertain the rights of the complainant Adelaida that is, to ascertain the value of the estate at the time of the old man's death, and then determine what her interest in the property was, figured from that basis, subject, of course, to all the debts and to the settlement of the taxes, which are now quite large, and the debts of the receivership.

It is contended by counsel for complainant that, under the law of Porto Rico (the old Civil Code of 1889), as it existed at the time of the death (1901) of the old man Felix Olivieri, regarding inheritances, a parent could, when there were no heirs to the estate save illegitimate or natural children, even though recognized, dispose by deed in his lifetime or by will of two thirds of his estate, the remaining one third belonging by force of law to all the illegitimate children. The exact reverse of this proposition is strenuously contended for by counsel for the principal and other respondents, that is, that a parent could only dispose of one third of his estate in his own lifetime, and

Olivieri v. Olivieri.

that the heirs, whether legitimate or illegitimate, by force of law, share and share alike, inherit the other two thirds of the estate. The portion of the Code that governs in the matter is comprised in §§ 806 et seq., and after reading and rereading the same, including §§ 842 and 847, we are constrained to agree with counsel for complainants that the sections preventing the parent from disposing of more than one third of his estate in his own lifetime applies only as against legitimate heirs, and that where all the heirs were illegitimate, he had the right, under the law, in his own lifetime, to dispose of two thirds of his estate, always subject to his debts, of course, if disposed of by will, and could either better any particular child or dispose of the property to strangers.

From all of the evidence in the cause, and because of the very high values placed in the will upon different plantations and portions of the estate, as compared with what the evidence shows to have been the actual and real value thereof at the time of his death, it is gravely doubtful whether the testator was in fact worth anything at the time of his death, after the liens and debts were satisfied; but, whatever he was worth, we hold that, as matter of law, he had a right to give two thirds of it to his daughter Adelaida. However, because of the uncertainty as to such values, and because of the certainty that, at the time of the old man's death, or even now, there will probably not remain in the estate, after the payment of the liens and debts, sufficient to satisfy what Adelaida's claim with interest would amount to, and, of course, whatever is left in the estate, her claims cannot be permitted to shut out all the other heirs.

Therefore we hold that all of the heirs, including Adelaida, as matter of law, at the time of their father's death, inherited

## Olivieri v. Olivieri.

the estate so far as actual legal title can be considered (that is, its residue), share and share alike; but as it is impossible to carry out the testator's exact intention, we will follow the doctrine of *cy prés,* and grant her the two thirds of his estate, which he had a right, as matter of law, to give her, either in his lifetime or by will, and which he evidently intended to give her. Therefore we will and do hold that she is entitled, as against the other heirs, to but two thirds of the net value, exclusive of taxes, of the properties upon which she has prior and subsequent liens as a creditor, provided the same shall not exceed the whole sum which her father intended to give her, which we hold, under all the circumstances of the case, to be, with interest, after making proper deductions, at the present time, the net sum of $12,500. We make this holding not only because of all of the facts stated, but because of other equities, such as large payments made to her in her father's lifetime, and because of the payments made to her by the receiver in this cause; and we hold that she is entitled to her lien as to this two thirds as against unsecured creditors because of the mortgages made to her in her father's lifetime. And we further hold and find that, as to all of the surplus or remainder of the estate, the said Adelaida shares, as aforesaid, equally with the other heirs, subject, of course, in all cases, to the receivership debts and the taxes.

Let counsel for complainant forthwith draw a decree to embody these views, for signature and entry, and let the cause be retained for all proper purposes, and the receivership continue, with directions to the receiver to proceed at the earliest possible date to pay off the receivership debts, as heretofore instructed by orders entered in the cause.

Olivieri v. Olivieri.

As soon as the receivership debts shall be paid, or in case any of the lien holders shall agree to assume the same, the court will receive applications for leave to such lien holders to foreclose their liens, and have the property upon which their liens exist sold to satisfy the same, subject to the taxes in each case. Any balances realized therefrom over and above enough to pay each claim respectively to be inherited as in these views indicated.